UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEYERA WALLACE,

        Plaintiff,

  v.                                                  Case No. 25-cv-325-pp

SAM FISHER,

        Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

      On March 4, 2025, the plaintiff—representing herself—filed a complaint alleging that the defendant, an employee of the Elm Grove Police Department, violated her civil rights. Dkt. No. 1. She a. <u>Id.</u> at 4. She also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will screen her complaint.

**I.    Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

      Federal law requires a person who files a complaint in federal court to pay $405—a filing fee of $350 (28 U.S.C. §1914(a)) and a $55 administrative fee (Judicial Conference of the United States District Court Miscellaneous Fee Schedule Effective the December 1, 2023, #14). To allow a plaintiff to proceed without prepaying the filing fee, the court must decide whether the plaintiff can pay the filing fee; if not, it must determine whether the lawsuit is frivolous. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i).

1

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose her financial condition and must do so truthfully under penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

The plaintiff's affidavit avers that she is not employed, not married and has one minor child whom she is responsible for supporting. Dkt. No. 2 at 1, 4. She avers that she has no wages or salary but that she receives $1,350 per month in Supplemental Security Income. Id. at 2. The plaintiff lists monthly obligations of $750 for rent, $300 for gas and $680 for other household expenses—a total of $1,730, which is $380 more than her reported monthly income. Id. at 2. She avers that she has no cash on hand or in a checking, savings or similar account. Id. at 3. She owns a car, a 2006 Chrysler 300, but no other property of value; she did not provide the value of the car. Id. at 3-4. Under the section titled "Other Circumstances," she reports that she is a single mother. Id. at 4.

Based on the information in the plaintiff's affidavit, the court concludes that she does not have the ability to *prepay* the filing fee. But the court advises the plaintiff that she still is responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; the plaintiff still owes the filing fee. See Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district

2

court may allow a litigant to proceed 'without *prepayment* of fees,' but not without *ever* paying fees.") (emphases in original).

## II. Screening the Complaint

### A. Legal Standard

The court must next decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A complaint filed by a self-represented litigant must be liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). But the court is "not charged with seeking out legal 'issues lurking within the confines' of the [self-represented] litigant's pleadings, and the court's duties certainly do 'not extend so far as to require the court to bring to the attention of the pro se litigant or to decide the unraised issues.'" Kiebala v. Boris, 928 F.3d 680, 684-85 (7th Cir. 2019) (quoting Caruth v. Pinkney, 683 F.2d 1044, 1050 (7th Cir. 1982)).

Although courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff need not plead every fact supporting her claims; she needs only to give the defendants a fair notice of the claims and the grounds upon which they rest. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state viable claims against a defendant, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content

3

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64.

Section 1983 of Title 42 "authorizes suits against government officials who violate a person's constitutional rights." Doxtator v. O'Brien, 39 F.4th 852, 860 (7th Cir. 2022) (citing 42 U.S.C. §1983. To state a claim for a violation of her civil rights under 42 U.S.C. §1983, the plaintiff must allege that (1) she was deprived of her constitutional rights and (2) whoever deprived her of those rights was acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009).

B.   The Plaintiff's Allegations

The plaintiff alleges that on April 8, 2023, the defendant[1] pulled her over "with a [sic] initial suspension [sic] of drinking . . . ." Dkt. No. 1 at 2. She alleges that it was later revealed she was "pulled over due to mechanical issues with [her] vehicle." Id. The plaintiff avers that the defendant threatened to tow her car if she refused the sobriety test "again!"[2] Id. She alleges that "[a]fter completing that test as well as the [breathalyzer] with no mess up, [she] was still placed under arrest for suspension [sic] of marijana [sic] use." Id. at 2-3.

The plaintiff alleges that "words were exchange[d]," and shortly after she was placed in handcuffs and put in the backseat of the patrol car. Id. at 3. She

---

[1] The plaintiff does not say so, but the court infers from the facts and the plaintiff's statement that the defendant is employed by the Elm Grove Police Department that he is a police officer.

[2] The plaintiff underlined the word "again" three times, implying that she'd been asked to take a field sobriety test before, but the complaint does not describe the prior incident.

4

alleges that then the defendant got out of the front seat "to where [she] was and strangled [her]"; she says that she was "on the verge of losing consciousness" until another officer noticed what "he"—presumably the defendant—was doing to her. Id. The plaintiff alleges:

> He wrote in the police report that I kicked him which he was found not truthful in recent trial I have the video evidence if needed. In results to his false claim I was Fired and couldnt find work for over a year after suffer anxiety/PIST anytime I see an officer depression and mental agony court fee's that Ive suffered from Etc.

Id.

Under "Relief Wanted," the plaintiff wrote that she wants to sue the defendant "and Waukesha County," and that she wants payment for excessive force, pain, suffering, police misconduct and medical treatment. Id. at 4.

   C.   Analysis

The plaintiff has not explained whether she is suing the defendant in his individual or his official capacity. In an abundance of caution, and because the plaintiff stated in the "Relief Wanted" section that she wanted to sue Waukesha County (even though she did not name Waukesha County in the caption of the complaint), the court will consider both options, starting with the defendant's individual capacity.

The plaintiff first alleges that the defendant threatened to tow her car if she refused the field sobriety test "again." The Constitution does not prohibit an officer from asking a motorist who appears impaired to take a field sobriety test, nor does it prohibit an officer from saying that he will have that person's car towed if the person does not take such a test. This allegation does not state a claim under §1983.

Next, the plaintiff alleges that although she took both a field sobriety and a breathalyzer test and passed, she was "placed under arrest," "put in

handcuffs" and put in the back seat of a patrol car. This sounds like a Fourth Amendment false arrest claim. "A plaintiff seeking to prevail on a claim of false arrest must show that [she] was arrested without probable cause because 'probable cause is an absolute defense to such a claim.'" Madero v. McGuinness, 97 F.4th 516, 522 (7th Cir. 2024) (quoting Lawson v. Veruchi, 637 F.3d 699, 703 (7th Cir. 2011) and Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir. 2009)). "An officer has probable cause when, 'at the time of the arrest, the facts and circumstances within the defendant's knowledge "are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed ... an offense."'" Id. (quoting Lawson, 637 F.3d at 703). At this early stage, the court must accept the allegations in the complaint as true, and thus must assume that the defendant had no probable cause to arrest the plaintiff. The court will allow the plaintiff to proceed on a Fourth Amendment false arrest claim against Fisher.

The plaintiff next alleges that the defendant strangled her until she almost lost consciousness. This sounds like a claim of excessive force. The court analyzes an officer's use of force under the Fourth Amendment's objective reasonableness standard, considering the situation from the perspective of a reasonable officer on the scene and taking into account the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer and whether the suspect was actively resisting or trying to flee. Alicea v. Thomas, 815 F.3d 283, 288 (7th Cir. 2016) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). Again accepting as true the facts the plaintiff alleged in her complaint, the court must assume at this early stage that the defendant strangled the plaintiff and that his use of that degree of force was objectively

6

unreasonable under the circumstances. The court will allow the plaintiff to proceed on a Fourth Amendment excessive force claim against Fisher.

The plaintiff alleges that the defendant wrote in the police report that the plaintiff kicked him; she says that the defendant was "found not truthful" in a trial and that she has video evidence. Although the plaintiff provides few details, it appears that she may be alleging that the defendant's false statement in the police report caused her to be unlawfully detained. That, too, is a Fourth Amendment claim. See Lewis v. City of Chicago, 914 F.3d 472, 476-77 (7th Cir. 2019), citing Manuel v. City of Joliet, Ill., 580 U.S. 357, 369 (2017) and Manuel v. City of Joliet, 903 F.3d 667, 670 (7th Cir. 2018). The court will allow the plaintiff to proceed against Fisher on claim that he violated her rights by making a false statement that caused her to be detained—"seized"—in violation of the Fourth Amendment.

Section 1983 allows a plaintiff to sue a "person" who violates her constitutional rights while acting under color of state law. Waukesha County (which the plaintiff states in her request for relief she wants to sue) is not a person. But in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (2018), the Supreme Court held that Congress intended municipalities and local governments to be included in the definition of "persons" "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." The Monell Court also held that a municipality could be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. But "[m]unicipal liability under *Monell* carries an important limitation: the statute

7

does not incorporate the common-law doctrine of respondeat superior, so a municipality cannot be held liable for the constitutional torts of its employees and agents." First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago, 988 F.3d 978, 986 (7th Cir. 2021) (citing Monell, 436 U.S. at 690-91). "[T]o prevail on a § 1983 claim under *Monell,* a plaintiff must challenge conduct that is properly attributable to the municipality itself." Id. (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997)). The Seventh Circuit has identified three types of actions that can support municipal liability under §1983:

> "(1) an express policy that causes a constitutional violation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic,* 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted).

Id.

The plaintiff alleges that the defendant works for the Elm Grove Police Department, not for Waukesha County. Elm Grove is a village located in Waukesha County; it is its own municipality, and the Elm Grove Police Department is an arm of the Village of Elm Grove, not Waukesha County. Even if the defendant worked for Waukesha County (rather than the Elm Grove Police Department), the complaint contains no allegations against the county. The plaintiff has not alleged that the defendant acted under an express policy of Waukesha County, or a practice that was so permanent and well-settled that it constituted a custom or practice, or that the defendant's actions were caused by a person with final decisionmaking authority for Waukesha County. Nothing in the complaint supports a Monell claim against Waukesha County and the court will not allow the plaintiff to proceed on any claim against the county.

8

Finally, the court has observed that the plaintiff did not state whether she was suing the defendant in his individual capacity or his individual capacity. A suit against a state actor in his "official capacity" is "another way of pleading an action against the entity of which the officer is an agent." Sow v. Fortville Police Dep't, 636 F.3d 293, 200 (7th Cir. 2011) (citing Kentucky v. Grama, 473 U.S. 159, 165-66 (1985) and Monell, 436 U.S. at 690). So if the plaintiff intended to sue the defendant (Sam Fisher) in his official capacity, that means she intended to sue the Village of Elm Grove, which is the "entity of which" Sam Fisher is an agent. But again, the complaint makes no allegations against the Village of Elm Grove. It does not allege that the defendant acted under an express policy of the Village of Elm Grove, or a practice that was so permanent and well-settled that it constituted a custom or practice, or that the defendant's actions were caused by a person with final decisionmaking authority for the Village of Elm Grove. Nothing in the complaint supports a Monell claim, or an official capacity claim, against the Village of Elm Grove.

To summarize: the court will allow the plaintiff to proceed against defendant Fisher in his individual capacity on claims that he violated her Fourth Amendment rights by falsely arresting her without probable cause, by using excessive force against her and by making a false statement which caused her to be detained without probable cause. The plaintiff may not proceed on any other claims against Fisher and may not proceed on claims against any other defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Sam Fisher under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendant to file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

It is the plaintiff's responsibility to notify the court if her address changes. If the plaintiff changes addresses without notifying the court, it may mean that she doesn't receive important documents such as court orders and could result in dismissal of her case.

Dated in Milwaukee, Wisconsin this 10th day of July, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**